An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1000

Filed 2 July 2025

Rowan County, No. 24JT000068

IN RE: J.S.N.R.

Appeal by respondent from judgment entered 19 August 2024 by Judge James F. Randolph in Rowan County District Court. Heard in the Court of Appeals 11 June 2025.

*Mercedes O. Chut, for the respondent-appellant father.*

*Barton & Doomy, PLLC, by Matthew J. Barton, for the petitioner-appellee.*

TYSON, Judge.

Eric Ingram ("Respondent") appeals from order entered 19 August 2024, which terminated his parental rights. We affirm.

## I.    Background

Respondent is the father of J.S.N.R. ("Jennifer"), born November 2008. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Jennifer's mother had left Jennifer with Petitioner, her mother's third cousin, shortly after her birth. Petitioner has raised and served as Jennifer's sole caretaker since. Jennifer's mother filled out and signed a "temporary custody" paper she had given to Petitioner.

No formal custody order has ever been entered. Petitioner has neither requested nor received any child support from Respondent or from Jennifer's mother. Jennifer is diagnosed as being on the Autism Spectrum, has socialization issues, issues with the texture of foods, and experiences trouble communicating.

Jennifer will be receiving services and therapy for her diagnosis when she is called off the provider's waiting list. Petitioner homeschools Jennifer to develop skills. It is unknown if Jennifer will be able to live independently or be able to enter the workforce.

Respondent was not listed as the father on Jennifer's birth certificate. Respondent was not present when Jennifer's mother left her with Petitioner. Respondent's only interactions with Jennifer were a few visits when Jennifer was very young. Respondent attempted to reschedule a medical appointment for Jennifer by impersonating Petitioner. Relations between Petitioner and Respondent deteriorated afterward. Respondent did not request visitation with Jennifer afterward.

Respondent was convicted of two counts of assault on a female and assault on a child in 2012 and was incarcerated from 20 September 2012 until March 2013. Respondent was convicted of driving while impaired ("DWI") in 2014 and again in 2017. Respondent was convicted of possession of a schedule II narcotic in 2017. Respondent was also incarcerated for several months during 2016. Respondent was incarcerated in 2020 for the second DWI conviction and for the possession conviction

in 2021 until 2022. Respondent was also convicted of felony manslaughter on 29 July 2022 and is currently incarcerated on this conviction with a projected release date of 3 March 2027.

Petitioner filed this action to terminate Respondent's parental rights on 4 April 2024. The district court appointed a guardian *ad litem,* who recommended Respondent's parental rights be terminated. The district court held a hearing on 19 August 2024 and terminated Respondent's parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(5) and (7) (2023) by order entered 23 August 2024. Respondent appeals.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § § 7A-27(b) and 7B-1001(a)(7) (2023).

## III.    Issues

Respondent argues the district court erred in granting the petition to terminate his parental rights. He argues insufficient evidence was presented to support the element of willfulness under N.C. Gen. Stat. § 7B-1111(a)(7), abandonment, and insufficient evidence was presented to support the petition under § 7B-1111(a)(5), lack of support.

## IV.    Standard of Review

The termination of a parent's parental rights in a juvenile matter is a two-stage process consisting of an adjudicatory stage and a dispositional stage." *In re*

*C.B.*, 375 N.C. 556, 559, 850 S.E.2d 324, 327 (2020). "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under N.C. Gen. Stat. § 7B-1111(a) (2023)." *In re A.B.C.*, 374 N.C. 752, 757, 844 S.E.2d 902, 907 (2020) (citation omitted).

If the trial court finds grounds exist to terminate parental rights, it moves to the dispositional stage to determine whether termination of parental rights would be in the best interests of the juvenile. *Id.* In the dispositional stage, the trial court's ruling is reviewed for abuse of discretion. *In re A.U.D.*, 373 N.C. 3, 6, 832 S.E.2d 698, 700 (2019). A trial court abuses its discretion when the ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015). "The trial court's conclusions of law are review[ed] *de novo*." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (citation omitted).

## V.   Termination of Respondent's Parental Rights

"The burden in these proceedings is on the petitioner or movant to prove the facts justifying the termination by clear and convincing evidence." N.C. Gen. Stat. § 7B-1111(b) (2023). If relevant, competent, and material evidence supports the findings, they are "binding on appeal." *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations omitted).

A trial court may terminate parental rights upon finding "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately

preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7) (2023). Abandonment exists "if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance[.]" *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). Our Supreme Court held: "abandonment requires a 'purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to the child.'" *In re L.M.M.*, 375 N.C. 346, 349, 847 S.E.2d 770, 773 (2020) (citation omitted).

Respondent argues the following finding of fact is unsupported by the evidence:

> The Respondent has abandoned the minor child pursuant to G.S. 7B-1111(a)(7) in that the Respondent, for a period of six months immediately preceding the commencement of this action, has failed to make any attempts to see the child, or have a relationship with the minor child. Specifically, the Respondent has not seen the child, nor made an effort to see the child, since approximately 2012. He has made no attempts to visit the child, or [to] have a relationship with the child in the six months immediately preceding the filing of this action. He has sent no cards, letters, or gifts for the minor child. He has abandoned the minor child in all respects.

This finding of fact is supported by the evidence in the record. No evidence tends to show Respondent had attempted to contact Jennifer or Petitioner within the relevant statutory period. N.C. Gen. Stat. § 7B-1111(a)(7) (2023).

Respondent maintains this lack of outreach is explained by the combination of his incarceration and Petitioner's changes of address and phone number over the

years. He argues the lack of communication with Petitioner or Jennifer does not reflect a willful abandonment.

"Although a parent's options for showing affection while incarcerated are greatly limited, a parent will not be excused from showing interest in his child's welfare by whatever means [are] available." *In re A.J.P.*, 375 N.C. 516, 532, 849 S.E.2d 839, 852 (2020) (citation and quotation marks omitted). Looking beyond the periods of Respondent's incarceration, it is clear he manifested an intention to forego his parental rights. He has seen Jennifer three or four times in her entire life since she was born in 2008, most recently when she was around two years old.

He has never signed the birth certificate, provided financial support, filed for custody of any kind, nor involved himself in Jennifer's life, while not in prison. Respondent's failure to contact Jennifer during the six-month period was not solely due to his incarceration or Petitioner's change of location, but was due to his willing relinquishment and willful abandonment of his parental responsibilities. Respondent does not challenge the district court's determination of Jennifer's best interests. Respondent's arguments are overruled.

"[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.'" *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005). We need not reach Respondent's additional arguments. The district court

did not err by terminating Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) (2023).

## VI.    Conclusion

Respondent's parental rights were properly terminated under N.C. Gen. Stat. § 7B-1111(a)(7) (2023).  We need not address Respondent's remaining arguments on appeal regarding N.C. Gen. Stat. § 7B-1111(a)(5)(2023).  *Id.*  The trial court's order is affirmed.  *It is so ordered.*

AFFIRMED.

Judges ZACHARY and COLLINS concur.

Report per Rule 30(e).